**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessie M Aponte, | No. CV-17-00741-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Jessie M. Aponte seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied him disability insurance benefits and supplemental security income under §§ 216(i) and 223(d) of the Social Security Act. Because Plaintiff has not shown that the administrative law judge's ("ALJ") decision is unsupported by substantial evidence or based on reversible legal error, the Court will affirm.

**I.   Background.**

Plaintiff is a 40 year old male who previously worked as a janitor, cashier, and laborer at a concrete plant. A.R. 31, 389. Plaintiff applied for disability insurance benefits and supplemental security income on June 11, 2012, alleging disability beginning on March 15, 2012. A.R. 378-95. On November 19, 2015, Plaintiff testified at a hearing before the ALJ. A.R. 43-84. A vocational expert also testified. *Id.* On January 14, 2016, the ALJ issued a decision that Plaintiff was not disabled within the

meaning of the Social Security Act. A.R. 19-32. This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. A.R. 1-3.

## II. Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.*

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability, the claimant must show that (1) he is not currently working, (2) he has a severe impairment, and (3) this impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") prevents his performance of any past relevant work. If the claimant meets his burden through step three, the Commissioner must find him disabled. If the inquiry proceeds to step four and the claimant shows that he is incapable

of performing past relevant work, the Commissioner must show in the fifth step that the claimant is capable of other work suitable for his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016, and has not engaged in substantial gainful activity since March 15, 2012. A.R. 21. At step two, the ALJ found that Plaintiff has the following severe impairments: borderline personality disorder, bipolar disorder NOS, panic disorder with agoraphobia, shoulder/hand arthralgia, and chronic pain syndrome. *Id.* The ALJ acknowledged that the record contained evidence of acute facial fractures, sciatica, rhinitis, skin rash, enlarged thyroid, headaches, lumbar spondylosis, and abdominal pain NOS, but found that these are not severe impairments. A.R. 21-22. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. A.R. 22-23. At step four, the ALJ found that Plaintiff has the RFC to perform medium work with some additional limitations, and that Plaintiff is able to perform his past relevant work as a janitor. A.R. 24-32.

**IV.     Analysis.**

Plaintiff argues that the ALJ erred by (1) rejecting his treating psychiatrist's opinion, (2) affording great weight to a consulting examiner's opinion but failing to include his opined limitations in the RFC analysis, and (3) finding moderate concentration limitations at step two but defining his RFC to include an ability to carry out simple instructions and tasks. Doc. 9 at 5-20.

    **A.     Weighing of Medical Source Evidence.**

        **1.     Legal Standard.**

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements

concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(2), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830. Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole[] or by objective medical findings," *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected for "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (internal quotations and citation omitted). To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). Under either standard, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

## 2. Dr. Sulley.

Dr. Adiza Sulley completed a medical assessment of Plaintiff in 2015, in which she diagnosed chronic post-traumatic stress disorder and major depressive disorder, resulting in anxiety, hypervigilance, irritability, excessive rumination, and decreased energy, motivation, concentration, and focus. A.R. 871. She opined that Plaintiff would be moderately limited in understanding and carrying out short, simple instructions, markedly limited in making judgments on simple, work-related decisions and interacting appropriately with the public, and extremely limited in understanding and remembering detailed instructions, interacting appropriately with supervisors and co-workers, and responding appropriately to work pressures and changes in a routine work setting. A.R. 870.[1] Dr. Sulley also opined that Plaintiff would be off task more than 30% of an eight-hour workday, five days a week; absent from work five days or more per month; unable to complete an eight-hour workday five days or more per month; and, compared to an average worker, he could be expected to perform a full-time job less than 50% as efficient on a sustained basis. A.R. 871.

Dr. Sulley's opinion is inconsistent with the opinions of two consulting examiners: Dr. Angel Gomez, who opined that Plaintiff is able to perform a range of medium work despite his impairments, and Dr. Mansfield Blair, who opined that Plaintiff is able to understand and carry out simple instructions and work-like procedures. *See* A.R. 26-27, 801-06, 815. Therefore, the Court must determine whether the ALJ's reasons for affording little weight to Dr. Sulley's opinion are specific, legitimate, and supported by substantial evidence. *Cotton*, 799 F.2d at 1408. The ALJ gave four reasons: (1) Dr. Sulley did not appear to be a treating doctor, (2) she relied heavily on Plaintiff's subjective reports, (3) her opinion is inconsistent with the entirety of the record, and (4) it is conclusory and unsupported. A.R. 29.[2]

---

[1] "Moderate" is defined as 10% off task. A.R. 870. "Marked" is defined as 11-15% off task. *Id.* "Extreme" is defined as greater than 15% off task. *Id.*

[2] Plaintiff asserts that the ALJ gave three reasons, but the record evidences four. *See* A.R. 29.

- 5 -

### a. The ALJ's First Reason.

The ALJ stated that it did "not appear Dr. Sulley actually treated [Plaintiff], as treating notes are consistently signed by Dan Muschevici, M.D., and Dr. Sulley failed to address this in her medical source statement." A.R. 29. Plaintiff asserts that this is incorrect; Dr. Sulley consistently prescribed medications and examined Plaintiff during 2014 and 2015 such that she is a treating doctor. Doc. 9 at 7. The record supports Plaintiff's assertion. *See, e.g.*, A.R. 1098-99, 1144-45, 1164-66, 1177-78, 1203-04, 1221-22, 1243-46, 1250-52. The Commissioner appears to concede that the ALJ erred in finding that Dr. Sulley is not a treating doctor, but argues any error is harmless because the ALJ gave additional valid reasons for rejecting his opinion. Doc. 10 at 6. The Court agrees that the remaining three reasons are specific, legitimate, and supported by substantial evidence, and that the ALJ's error was harmless.

### b. The ALJ's Second Reason.

The ALJ found "good reasons" to question the reliability of Plaintiff's subjective complaints, and stated that Dr. Sulley "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." A.R. 29. Generally, a physician's reliance on a claimant's "subjective complaints hardly undermines [her] opinion as to [his] functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (internal citations and quotations omitted). But if "a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence," and "the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

The ALJ found that Plaintiff's statements concerning his symptoms were not entirely credible because he "has not generally received the type of medical treatment one would expect for a totally disabled individual," the medical evidence fails to corroborate

his mental symptoms, his daily activities are not as limited as would be expected, and at least one examining doctor reported that he could not rule out "the possibility that [Plaintiff] was exaggerating his symptoms." A.R. 24-27. The ALJ also noted that Plaintiff's own statements undermined his credibility. A.R. 31. For example, Plaintiff's treatment notes reflect that he reported he "is not able to look for a job, as he needs time to take [care of] his daughter," and "would rather wait for his Social Security to be approved as opposed to work." A.R. 31, 785, 954. Finally, the ALJ added that Plaintiff was able to participate fully in the hearing without being distracted or showing signs of pain or discomfort. A.R. 31.

Plaintiff does not dispute the ALJ's reasons for discrediting his testimony. Plaintiff simply asserts that the ALJ speculated that Dr. Sulley's opinion is based on his subjective complaints, and the Court "may not assume that doctors routinely lie in order to help their patients collect disability benefits." Doc. 9 at 9 (quoting *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995)). But the ALJ did not base this conclusion on mere speculation. He reasoned that Dr. Sulley's opinion must have been based primarily on Plaintiff's subjective complaints because the opinion is inconsistent with her own treatment records and the record as a whole. As explained below, the Court finds that the ALJ's determination of inconsistency is supported by substantial evidence. Thus, it was reasonable for the ALJ to infer that the opinion must have relied on Plaintiff's subjective complaints and to discount the opinion because those complaints lack credibility. *See Molina*, 674 F.3d at 1111 ("[W]e must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

### c. The ALJ's Third Reason.

Citing specific record evidence, the ALJ reasoned that Dr. Sulley's opinion "remains unsupported by the relatively unremarkable mental status examinations and notations that the claimant is psychiatrically stable." A.R. 29. Plaintiff does not address this reason in his opening brief. In his reply, Plaintiff asserts that there is no need to address it because this reason suffers from a "complete lack of meaningful explanation,"

and a finding that Plaintiff is stable has no bearing on Dr. Sulley's evaluation of Plaintiff's work-related limitations. Doc. 11 at 3. The Court need not consider arguments made for the first time in Plaintiff's reply. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). But even if the Court considers this argument, there is no error.

Although the ALJ did not explain the medical evidence of stability in detail in the particular paragraph where he addressed Dr. Sulley, it is clear that the ALJ was referring back to his earlier summary of Plaintiff's mental examinations and reports. *See* A.R. 25-26. In that portion of the opinion, the ALJ explained that Plaintiff was routinely seen for counseling and medication management, consistently reported that the treatment kept his mood stable and controlled his anger, denied side effects from the medications, routinely appeared alert, oriented, and calm, and had good hygiene, organized speech, logical thought process, and good insight, judgment, and fund of knowledge. *Id.* The ALJ noted that at times he was lethargic, anxious, teary eyed, or in a depressed mood, but that these symptoms were infrequent and related to family stressors, such as his daughter being removed from his care. *Id.* Based on this evidence, the ALJ concluded that "despite stressors, [Plaintiff] was able to remain stable." A.R. 26. The overall picture of mental stability created by the record is inconsistent with Dr. Sulley's conclusion that Plaintiff would have moderate, marked, or extreme limitations in all functional categories as a result of his mental impairments. Thus, the ALJ's conclusion that Dr. Sulley's evaluation was inconsistent with the record is supported by substantial evidence, and this is a specific, legitimate reason to discount it.

### d. The ALJ's Fourth Reason.

Finally, the ALJ stated that "Dr. Sulley's opinion is quite conclusory, providing very little explanation of the evidence relied on." A.R. 29. Plaintiff argues that this is incorrect because Dr. Sulley's opinion contains a comments section, and in any case this is an insufficient reason because the Ninth Circuit has "explicitly endorsed assessments expressed in the form of questionnaires." Doc. 9 at 12. But this misses the point. Although an ALJ may not reject a treating physician's opinion simply because it is a

questionnaire, an ALJ may reject such an opinion for specific, legitimate reasons. *See Lester*, 81 F.3d at 830-31. Plaintiff relies on *Garrison v. Colvin*, but in that case the questionnaires "were entirely consistent with the hundreds of pages of treatment notes." 759 F.3d 995, 1014 (9th Cir. 2014); *see also Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (finding error where ALJ rejected a treating physician's "check-box" form because the opinion was supported by plaintiff's testimony and the doctor's extensive treatment notes). Here, the ALJ explained that Dr. Sulley's opinion was contradicted by the totality of the medical evidence, which suggested that Plaintiff's impairments are adequately managed through treatment and do not preclude employment. A.R. 25-26, 29. Given the questionnaire's inconsistency with the medical record, its conclusory statements and lack of explanation were more acute problems, leaving the ALJ with little basis for crediting Dr. Sulley's opinion. The ALJ did not reject the opinion simply because it is in the form of a questionnaire; he rejected it because it is largely unexplained, particularly when considered in light of the medical evidence. The Court will not disturb this determination, as it is supported by substantial evidence.

### 3. Dr. St. Clair.

Plaintiff argues that the ALJ erred by assigning great weight to the opinion of a state agency psychological examiner, Dr. St. Clair, but then failing to include his opined limitations in Plaintiff's RFC. Doc. 9 at 13-20. Dr. St. Clair diagnosed Plaintiff with bipolar disorder NOS and personality disorder NOS. A.R. 713. He opined that Plaintiff would "have significant difficulty in being able to understand or remember simple or complex instructions or work-like procedures," and "some difficulties" in sustaining concentration and social interactions, particularly getting along with coworkers and maintaining socially appropriate behaviors. A.R. 714.

The ALJ summarized Dr. St. Clair's findings, but discounted many of them because Dr. St. Clair indicated he could not rule out the possibility that Plaintiff was malingering. A.R. 27. Specifically, on the immediate recall test, Plaintiff was unable to recall any of the three items until the fifth trial, "which is extremely unusual, even with

people with significant brain injury." A.R. 27, 712. The ALJ also noted that Dr. St. Clair's opinion was "somewhat vague" and did not provide "specific limitations." A.R. 27. Further, he explained that it "appear[ed Dr. St. Clair] relied quite heavily upon [Plaintiff's] subjective report of symptoms and the performance on the exam, which as this physician noted, may not have been accurate due to malingering." *Id.* He also pointed out that Plaintiff's statement to Dr. St. Clair that he had no friends was in "direct contrast to his testimony during the hearing" that he had two friends. A.R. 27, 63, 709. The ALJ concluded: "On the other hand, this physician did have the opportunity to examine the claimant and the diagnoses rendered remain supported by the medical evidence overall. I have therefore given this assessment great weight." A.R. 27.

Although he decided to give the opinion great weight, the ALJ did not include Dr. St. Clair's opined difficulties in Plaintiff's mental RFC or in the hypothetical he posed to the vocational expert. *See* A.R. 24 (describing Plaintiff's RFC, stating Plaintiff "retains the ability to understand, remember, and carry out simple instructions and to perform simple, routine, and repetitive tasks," and "can engage in occasional interaction with the public, co-workers, and supervisors with no crowd contact"); A.R. 77 (describing same limitations to vocational expert). Plaintiff argues that the ALJ erred by affording great weight to the opinion but excluding the limitations from his RFC. A.R. 13-15. The Commissioner argues there was no error because the ALJ explained his reasons for discounting those parts of Dr. St. Clair's opinion. Doc. 10 at 8-9. The Court agrees with the Commissioner.

The ALJ identified portions of Dr. St. Clair's opinion that were unreliable, explained his reasons for discrediting those portions, and excluded them from Plaintiff's RFC. Plaintiff does not seriously challenge the ALJ's finding that Dr. St. Clair's opined memory and concentration limitations were unreliable because of the likelihood of malingering. *See* Doc. 9 at 14-15 ("Admittedly, as the ALJ noted, the examining psychologist stated, 'malingering (an exaggeration of symptoms) cannot be ruled out,' but Dr. St. Clair did not diagnose malingering.") (internal citations omitted).

Moreover, the Court finds no legal error because the ultimate RFC determination remains supported by substantial evidence without Dr. St. Clair's opinion. As explained above and in the ALJ's decision, Plaintiff's treatment records spanning multiple years consistently indicate fair or good concentration and memory, logical thought process, and an ability to maintain personal hygiene, prepare nutritious meals, complete daily household chores, care for young children, manage finances, follow a medical treatment plan, exercise, attend church once or twice per week, utilize community resources, and communicate needs effectively. *See, e.g.*, A.R. 25-26, 902-1255. Consulting examiner Dr. Karen Mansfield-Blair noted the possibility of malingering and opined that Plaintiff is able to understand, remember, and carry out simple one- to three-step instructions. A.R. 28, 809-15. State consulting examiner Dr. Angel Gomez opined that Plaintiff can perform a range of medium work and is able to follow instructions and understand normal discussion despite his impairments. A.R. 26-27, 801-03. And the ALJ cited a psychological evaluation performed by Dr. Charles House, who suspected that the test results underestimated Plaintiff's actual abilities. A.R. 27, 672. The totality of the evidence thus supports the ALJ's RFC determination that Plaintiff is able "to understand, remember, and carry out simple instructions and to perform simple, routine, and repetitive tasks," and "engage in occasional interaction with the public, co-workers, and supervisors." A.R. 24. Although the evidence may be susceptible to more than one rational interpretation, the Court must uphold the ALJ's decision because it is supported by inferences reasonably drawn from the record. *See Molina*, 674 F.3d at 1193.

### B. Plaintiff's Mental RFC.

At step two, the ALJ determined that Plaintiff is moderately limited in concentration, persistence, or pace. A.R. 23. Plaintiff argues that the ALJ erred in defining his mental RFC in light of this step-two determination. Doc. 9 at 15-20. While the ALJ must include all of a claimant's restrictions in the RFC, the Ninth Circuit has explained that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions

identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). "[T]he relevant inquiry is whether the medical evidence supports the ALJ's finding." *Bennett v. Colvin*, 202 F. Supp. 3d 1119, 1126 (N.D. Cal. 2016). For the same reasons discussed above, the ALJ's determination that Plaintiff retained the ability to understand and complete simple tasks and occasionally interact with co-workers and the public despite his concentration limitations is consistent with the medical and other evidence in the record, and adequately captures Plaintiff's limitations.

Plaintiff cites two Ninth Circuit cases for the proposition that an ALJ errs by finding moderate concentration limitations at step two but not including them in the RFC. Doc. 9 at 17 (citing *Lubin v. Comm'r of Soc. Sec. Admin.*, 507 F. App'x 709 (9th Cir. 2013); *Brink v. Comm'r of Soc. Sec. Admin.*, 343 F. App'x 211 (9th Cir. 2009)). In *Lubin*, the ALJ noted moderate limitations in concentration, persistence, or pace, and then determined the claimant had the RFC to perform "one to three step tasks." 507 F. App'x at 712. The court held that this RFC did not capture the concentration, persistence, or pace limitation, but did not explain its rationale in detail. *Id.* In *Brink*, the ALJ noted moderate difficulty with concentration, persistence, or pace, but defined the claimant's RFC to include the ability to perform "simple, repetitive work." 343 F. App'x at 212. The court again held that this did not fully capture the claimant's limitations. *Id.* The *Brink* court distinguished *Stubbs-Danielson*, where the medical testimony "did not establish any limitations in concentration, persistence, or pace," because Brink's medical records did establish such limitations. *Id.* This case is more analogous to *Stubbs-Danielson*.

When the ALJ acknowledged "moderate difficulties" in concentration, persistence, or pace at step two, he explained that "there are no deficiencies noted with concentration or attention among treating notes," "no significant memory or attention problems observed during [Dr. Tarazon Weyer's consultative examination]," and progress notes state Plaintiff "was able to take medications as prescribed, manage and budget his finances, and manage his time effectively, all of which require at least some ability in this

regard." A.R. 23. The ALJ concluded, however, that during Dr. St. Clair's examination, Plaintiff "exhibited variable concentration," and therefore he found "moderate difficulties in this regard." *Id.* Thus, the only evidence the ALJ relied on in finding moderate concentration difficulties was Dr. St. Clair's opinion, which the ALJ addressed in more detail in the RFC analysis. In that part of the decision, the ALJ explained that Dr. St. Clair's assessment of Plaintiff's memory and concentration was unreliable – as Dr. St. Clair himself noted. A.R. 27, 711-12. As in *Stubbs-Danielson*, the ALJ explained his omission of the moderate concentration difficulties from the RFC by reference to the medical findings, which show that Plaintiff generally has fair or good concentration and retains the ability to perform simple, routine, and repetitive tasks. 539 F.3d at 1173-75. The ALJ's step-two finding of moderate limitations in concentration, persistence, or pace did not mandate a particular RFC, and the ALJ's RFC determination adequately captured the restrictions reflected in the medical evidence.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 8th day of January, 2018.

_____
David G. Campbell
United States District Judge